IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal Indictment |
| | : | No. 2:11-CR-0022-RWS-SSC |
| EDWARD TREISBACK | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Before the court is Defendant's "Preliminary Motion to Dismiss Due to Outrageous Law Enforcement Conduct." [Doc. 27]. For the reasons that follow, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## Procedural History

On May 9, 2011, the undersigned issued a search warrant authorizing the search of Defendant's residence. (See Doc. 1, Affidavit of Anthony Scott, ¶ 19). That warrant was executed on May 13, 2011, and during the search, agents found "numerous images of child pornography" in a room identified as Defendant's bedroom, including hard copy images, DVDs, and images on computers found in that room. (See id.; Doc. 23 at 15, 21-23, 34).[1] The agents seized other items from the residence, including a loaded firearm, girls' panties and a doll with a "burnt off" face. (Doc. 23 at 17-18, 25). Defendant was arrested and charged with receiving and possessing child pornography. (See Docs. 1, 3; see also Doc. 23 at

---

[1] Docket entry 23 is a transcript of the May 16, 2011 preliminary and detention hearing at which Anthony Scott, a Special Agent with the Department of Homeland Security (see Doc. 23 at 7, 10), testified.

34). In an indictment filed June 7, 2011 [Doc. 11], Defendant was charged with possession of a computer containing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The court conducted a preliminary and detention hearing on May 16, 2011 and found that there was probable cause to believe that Defendant committed the offense alleged in the complaint and ordered that Defendant be detained pending trial. (See Doc. 6; Doc. 23 at 31, 59).

On November 9, 2011 Defendant filed the pending Motion to Dismiss Due to Outrageous Law Enforcement Conduct [Doc. 27], seeking dismissal of the indictment based on the alleged misconduct of law enforcement officers while they were in Defendant's residence. The Government filed a response in opposition to Defendant's motion [Doc. 29], and Defendant filed a reply [Doc. 32].

## Discussion

Defendant asserts that law enforcement officers engaged in "outrageous . . . conduct" when they entered his home, and therefore, the indictment should be dismissed. (Doc. 27, Def. Br. at 6). Specifically, Defendant asserts, "[u]pon information and belief," that officers injured his elderly father with whom he lives "during their entry into the home." (Id. at 1-2). Defendant also contends that "[t]he discovery provided to [Defendant] indicates that law enforcement testified falsely" at the preliminary hearing concerning the location of a weapon and Defendant's actions during the search, and they also tampered with evidence by moving a weapon and ammunition and a doll, "to take photos of said evidence in a more prejudicial setting than that wherein the evidence was originally found."

2

(Id. at 2-6; Doc. 32, Reply at 2-3). Defendant "requests this Court conduct an evidentiary hearing on the matter after which the Court should dismiss the instant indictment due to outrageous law enforcement conduct." (Doc. 27, Def. Br. at 6).

The Government argues that Defendant has not supported his allegations, but "even assuming only for the sake of argument that any of the allegations are true, the conduct alleged does not rise to the level of being so outrageous that the indictment should be dismissed." (Doc. 29, Def. Br. at 2). The undersigned agrees.

As an initial matter, the undersigned finds that Defendant has made no factual or legal showing that he is entitled to a hearing on his claim of outrageous conduct. Moreover, even if the court accepts as true Defendant's allegations, Defendant has not shown that the alleged conduct warrants dismissal of the indictment.

In <u>United States v. Jayyousi</u>, 657 F.3d 1085 (11th Cir. 2011), the court affirmed the district court's denial of defendant Jose Padilla's "motion to dismiss his indictment based on alleged outrageous government conduct while he was in custody at the Naval Consolidated Brig in South Carolina due to his designation as an enemy combatant." 657 F.3d at 1111-12.[2] The court explained that it had

---

[2] In her dissenting opinion, Judge Barkett disagreed with the majority on whether the trial court had abused its discretion by considering the conditions of the defendant's pre-trial confinement in sentencing the defendant, and she wrote that the defendant had "presented substantial, detailed, and compelling evidence about the inhumane, cruel, and physically, emotionally, and mentally painful conditions in which he had already been detained for a period

3

"never applied the outrageous government conduct defense and ha[d] discussed it only in dicta" and that several other circuits "have either rejected this defense completely" or "have been sharply critical of the defense," thus casting doubt on the viability of the defense. Id. at 1111. The court explained further, "Although we have never acknowledged the existence of the outrageous government conduct doctrine, we note that the actionable government misconduct must relate to the defendant's underlying or charged criminal acts." Id.[3] The court held that, even if it were to adopt the defense, it did not apply in that case because Padilla "d[id] not allege any government intrusion into his underlying criminal conduct," i.e., "that the government caused him to leave the United States to be a jihad recruit," but "[i]nstead, his claim of outrageous government conduct relates to alleged mistreatment he received at the brig after the conclusion of his criminal acts and prior to the indictment on the present charges." Id. at 1112.

Similarly, in this case, Defendant does not allege any Government intrusion into the criminal conduct underlying the indictment, i.e., he does not allege "that the government caused him to" possess a computer with child pornography. All

---

of almost four years." 657 F.3d at 1131. Defendant's allegations of outrageous conduct in this case are benign by comparison.

[3] The undersigned notes that in United States v. Haimowitz, 725 F.2d 1561 (11th Cir.), cert. denied, 469 U.S. 1072 (1984), a case cited by Defendant (see Doc. 27, Def. Br. at 5-6), the court wrote, "In *United States v. Russell*, 411 U.S. 423 [] (1973), the Supreme Court recognized outrageous governmental conduct as a legal defense." Id. at 1577. In Russell, the Court actually wrote, "While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed." Id. at 431-32 (internal citation omitted). Therefore, it is questionable whether the Court in Russell "recognized outrageous governmental conduct as a legal defense."

4

of the alleged Government misconduct occurred during the execution of a search warrant, "after the conclusion of his [alleged] criminal acts and prior to the indictment on the present charges," as in <u>Jayyousi</u>. Therefore, even if the Eleventh Circuit recognized an outrageous Government conduct defense, it does not apply to this case.[4]

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss the indictment due to outrageous law enforcement conduct [Doc. 27] be **DENIED**.

## Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's "Preliminary Motion to Dismiss Due to Outrageous Law Enforcement Conduct" [Doc. 27] be **DENIED**.

**IT IS FURTHER ORDERED** that, subject to a ruling by the District Judge on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO REPORTED, RECOMMENDED, and ORDERED** this 10th day of February, 2012.

---

[4] The undersigned notes that the cases cited by Defendant (<u>see</u> Doc. 27, Def. Br. at 5-6) demonstrate that, to the extent an outrageous Government conduct defense exists, it applies only in those cases where the defendant alleges "government intrusion into his underlying conduct." <u>Jayyousi</u>, 657 F.3d at 1112. In <u>Haimowitz</u>, the defendant alleged the investigation "was an undercover operation created entirely by the government, and as such, violated due process guarantees of fundamental fairness." 725 F.2d at 1577. In <u>United States v. Al Kassar</u>, the defendant alleged that "the DEA agents' pervasive involvement in the weapons deal [at issue] amounted to outrageous government conduct violative of their rights to due process under the Fifth Amendment." 660 F.3d 108, 120 (2d Cir. 2011). And in <u>United States v. Myers</u>, the defendant argued that his due process rights were violated because the undercover agent "coached" him to take a bribe. 692 F.2d 823, 842-43 (2d Cir. 1982), <u>cert. denied</u>, 461 U.S. 961 (1983).

*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge